PER CURIAM.
¶1 Valaria Brooks appeals pro se from an order for a foreclosure judgment and a money judgment in favor of Kilbourn Woods Homeowners Association, Inc. ("the Association"). The $ 21,219.57 total judgment comprises a money judgment of $ 250.90 and $ 20,000 for reasonable attorneys' fees, plus statutory costs. We affirm.
¶2 Brooks' case comes to us with some history and, notably, her misunderstanding of that history. Brooks owned property that was part of the Association. When she did not pay her $ 150 assessment for 2015, the Association brought a small-claims action against her. As the Association's action was brought outside the time frame set forth in the Declaration, this court ruled in favor of Brooks. Kilbourn Woods Homeowners Assoc., Inc. v. Valaria Brooks , No. 2014AP1157, unpublished slip op. ¶17 (WI App Oct. 1, 2014).
¶3 Apparently believing the ruling meant she did not owe her 2015 dues, Brooks also did not pay her 2016 assessment. The Association filed maintenance liens against her unit under WIS. STAT. § 779.70 (2017-18)[1] for both years' dues and, on June 30, 2016, filed an action for foreclosure and money judgment.[2] Brooks timely filed an answer and amended answer.
¶4 In October 2016, the Association moved for summary judgment. Brooks moved pro se to dismiss the motion, alleging extortion, fraudulent data alteration, criminal slander of title, and frivolousness.
¶5 On January 9, 2017, Brooks, now represented by counsel, opposed the Association's motion for summary judgment and, without seeking or being granted leave of court, filed a second amended answer and counterclaim asserting the slander-of-title claim. The Association opposed her filings, the court directed the parties to take discovery, Brooks and her attorney parted ways, and the court set a summary judgment hearing. In the meantime, Brooks moved pro se for summary judgment on her slander-of-title claim. The Association again objected.
¶6 The circuit court denied both parties' summary judgment motions on grounds that there remained disputed issues of material fact in regard to the Association's rules, "what they have to follow, what was done, when the assessment was due, and how the lien was filed against the property owner." The court set the case for trial. Six months later-by now, December 2017-Brooks filed another motion for summary judgment. She asserted that, while "there is no specific statute that covers this Plaintiff's egregious wrongful lien filing," she was "once again ask[ing] for Summary Judgement [sic] now on both liens 2015 and 2016 in the amount of [$] 888,000.00."[3]
¶7 In January 2018, the court denied Brooks leave to file her second amended answer and counterclaim, thus dispensing with her slander-of-title claim. It reasoned that, without leave of court, she had filed her pleading more than six months after the Association filed its summons and complaint on June 30, 2016. It also denied her December 2017 summary judgment motion for being unsupported by any affidavits. Then, after a bench trial, the court ruled in favor of the Association and entered an order for foreclosure and a money judgment of $ 250.90,[4] as well as $ 20,000 for reasonable attorneys' fees and statutory costs.
¶8 Brooks' basic argument on appeal is rooted in her mistaken belief that the circuit court erred in rejecting her slander-of-title claim in her second amended answer because, she claims, under this court's October 2014 ruling, the 2015 lien was "fraudulent." She further insists that, were it not for that "wrongful" 2015 lien, the 2016 lien would not have been filed.[5]
¶9 A party may amend its pleadings once as a matter of course within six months after the filing of the summons and complaint. WIS. STAT. § 802.09(1). Whether to permit any subsequent amendments is discretionary with the circuit court. Rendler v. Markos , 154 Wis. 2d 420, 433, 453 N.W.2d 202 (Ct. App. 1990). "We affirm discretionary decisions if the court applied the correct law to the relevant facts and reache[d] a reasonable result through a rational process." Habermehl Elec., Inc. v. DOT , 2003 WI App 39, ¶12, 260 Wis. 2d 466, 659 N.W.2d 463.
¶10 The circuit court's findings set forth the chronology of the case, from the filing of the complaint on June 30, 2016, through Brooks' pro se filings, her late retention of counsel in December 2016, and the grant of two extensions to respond to the Association's summary judgment motion. Rather than seeking leave to file an amended pleading, Brooks filed an answer, counterclaim, and affirmative defenses on January 9, 2017,[6] more than six months after the June 30, 2016 filing of the complaint. The court found it untimely. That finding is not clearly erroneous. The court's decision represents a proper exercise of discretion.
¶11 Outside of the timeliness matter, challenging the 2015 maintenance lien as fraudulent through the counterclaim would have been futile. Brooks does not dispute that she did not pay her Association fees. Neither the Association's Declaration nor the board's unanimous "Consent Resolution" establishing a policy for collecting delinquent assessments state that the failure to bring an action or to foreclose upon a lien within six months of the date the amounts become due waives the debt or constitutes debt forgiveness. Here, the 2016 lien was properly and timely filed. Only the 2015 lien action was untimely. Pursuant to this court's 2014 decision, the Association withdrew its request for foreclosure of that lien; it did not have to dismiss it. As the 2015 and 2016 liens stand separately, the fate of the 2015 lien did not determine the validity of the 2016 lien. And the facts of this case do not support Brooks' slander-of-title claim against individual Association board members asking for "punishable incarceration" against them "for their obvious felony."
¶12 Finally, Brooks did not show entitlement to judgment as a matter of law. "We review a motion for summary judgment using the same methodology as the trial court." M & I First Nat'l Bank v. Episcopal Homes Mgmt. , 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995) ; WIS. STAT. § 802.08. "That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." M & I First Nat'l Bank , 195 Wis. 2d at 496-97. Summary judgment presents a question of law that we review de novo. Id.
¶13 Brooks misunderstands that the Association was allowed to go to trial despite being denied summary judgment when it "could not make [its] case." The circuit court denied both parties' early summary judgment motions because factual disputes remained, not because they had no case. Brooks' December 2017 motion for summary judgment, however, gave the court little to work with beyond uncorroborated and conclusory factual assertions in support of her slander-of-title claim. Those do not meet the evidence requirements of summary judgment methodology. As material facts still remained in dispute, summary judgment was properly denied.
¶14 In reviewing findings in a trial to the court, we defer to that court's superior position in weighing testimony, assessing witness credibility, and resolving conflicts in the testimony. Tang v. C.A.R.S. Prot. Plus, Inc. , 2007 WI App 134, ¶19, 301 Wis. 2d 752, 734 N.W.2d 169. We review the evidence in the light most favorable to the findings the trial court made and, when more than one reasonable inference can be drawn from the credible evidence, we accept the one the trial court drew. Id. Findings of fact will not be set aside unless clearly erroneous. WIS. STAT. § 805.17(2).
¶15 MPC Property Management maintains and serves as custodian of the Association's records. Bernard Petersen, MPC's managing agent as of January 1, 2015, testified, identifying exhibits such as the letter to Association homeowners introducing MPC, describing its role, contact information, and telling homeowners how to pay their assessments; the Association's Declaration, bylaws, and the February 2015 Consent Resolution; the board's annual letters sent out with a copy of each year's budget and assessment per lot; notices advising Brooks that her 2015, and then 2016, assessments were thirty days past due, the interest that would be charged, and that an account sixty days overdue would be referred for collection; two reminder letters to Brooks that she did not pay her 2016 assessment; and the amounts Brooks owed for unpaid assessments, associated fees and interest, and, per Article 7.07 of the Declaration, attorneys' fees and costs. Brooks' brief testimony did not contradict Petersen's.
¶16 Based on Petersen's and Brooks' testimonies, the court found that Petersen's testimony was credible; the exhibits established what Brooks owed; as one of the first Association members, Brooks knew assessments would be sent, must be paid, and had paid dues in the past; she was sent notices of dues and past-due reminders; all notices were sent to her last-known address where she had resided "for years" and bore the proper zip code;[7] and she refused to pay her 2016 assessment and now owed $ 150 for 2016, plus a late fee of $ 30 and interest.
¶17 Beyond unpaid dues, the Association's Declaration broadly authorizes the Association's Board to seek recovery of court costs, attorneys' fees, and other fees and expenses. The Association's Consent Resolution narrows the remedy to "reasonable" attorney fees and costs. We review a circuit court's award of attorneys' fees under the erroneous exercise of discretion standard. Hughes v. Chrysler Motors Corp. , 197 Wis. 2d 973, 987, 542 N.W.2d 148 (1996).
¶18 Twenty thousand-plus dollars in attorneys' fees and costs on this less-than-$ 300 case might seem lopsided. But as the circuit court found, the sum was reasonable in the context of a case that, while it was her right, Brooks fought "vigorously" for nineteen months. Her own changing, sometimes mistaken, litigation strategies begot additional responsive pleadings and court proceedings. Representing oneself is not always cost-effective.
¶19 Based on the record, we conclude that the circuit court's award of attorneys' fees and costs was reasonable and not an erroneous exercise of discretion.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The Association acknowledged that, by its own declaration and documents, it waited too long to file its motion to foreclose on the 2015 lien and agreed that it no longer could seek foreclosure of that lien or the amounts due under it in a money judgment. The Association nonetheless argued that, as the filing of the 2015 lien itself was entirely proper, Brooks still owes the unpaid assessments to the Association.

Brooks included in the $ 888,000 the loss of her $ 222,000 house to foreclosure, $ 156,000 in alleged annual medication costs, and the annual cost of her disability insurance. The action for foreclosure of the mortgage on her home was a separate proceeding. Nationstar Mortg. LLC v. Brooks , Kenosha Cty. Circuit Court Case No. 2017-CV-309. That action and the other enumerated costs are irrelevant to this case.

The $ 250.90 represents the 2016 dues assessment of $ 150 plus a $ 30 late fee and the $ 70.90 in interest that accrued in calendar year 2016.

Charitably said, Brooks' appellate brief and her arguments are difficult to decipher and track. While we will make some allowances for the failings of pro se briefs, we will not scour the record to develop viable, fact-supported legal theories on a party's behalf, State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992), or abandon our neutrality to develop a litigant's arguments, Industrial Risk Insurers v. American Engineering Testing, Inc. , 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

While the transcript reflects that the court said that Brooks filed the documents on January 6, 2017, the record documents are stamped January 9, 2017. Either date supports the court's rationale, however.

The court took judicial notice of Brooks' zip code from the tax key ID for her property entered into the Kenosha County Tax Assessor's website.